You're earning your pay today. May it please the court, again I'm Aaron Holt and I represent the appellant in this case Anthony Jean. I've asked this court to reverse Mr. Jean's conviction because the district court erred by denying his motion to suppress and also abused his discretion by partially denying his motion to compel. Mr. Jean moved for the suppression of all evidence obtained as the result of the search of his computer that was performed via the network investigative technique deployed by the FBI. Probably need to slow down a little bit. Sure. We appreciate the efficiency. Pursuant to a void warrant issued by a magistrate judge in the Eastern District of Virginia and I can say that confidently because after I filed the initial brief this court decided the combined cases of United States v. Horton and United States v. Krogan, which involved this very same warrant, the court in that decision agreed with many of the arguments advanced by Mr. Jean in the instant case but ultimately ruled against our position. The court did conclude that the magistrate judge was without authority to issue the NIT warrant under Rule 41B of the Rules of Criminal Procedure. The court also determined that this violation was of constitutional magnitude and the court decided that the warrant was void ab initio so it was as if there were no warrant. It was the equivalent of a warrantless search of Mr. Jean's computer in the Western District of Arkansas. However, the court also concluded that the good faith exception to the exclusionary rule announced in United States v. Leon could be applied to warrants that are void ab initio and that the exception did in fact apply to prevent exclusion of the evidence obtained pursuant to the NIT warrant in this case. Although Mr. Jean continues to assert that the good faith exception should not apply under the circumstances of this case, I also have to recognize that this court is currently bound by the panel's decision in the Horton and Krogan cases. I would just like to point out a couple of things regarding that good faith exception simply to suggest why I think this issue may warrant the attention of the full court. We continue to argue that the good faith exception shouldn't apply in the case where a warrant is void ab initio because as I pointed out, the search of his computer was essentially warrantless. Is there any factual basis for distinguishing this case from Horton on the Leon point? I know you didn't brief it from that perspective, but I'm sure you thought about it. Factually, it's essentially the same situation in each. I would point out I guess that we did argue in this case in a way that I don't believe was argued in that case that from the face of the warrant itself, the search that occurred was outside the scope of what the warrant permitted. When you look at the actual warrant, it indicated that it was authorizing a search of property located in the Eastern District of Virginia. Doesn't it also say wherever located? The warrant itself does not, Your Honor. The affidavit that was made in connection with the application for the warrant did say that on page 29 of the 31 page affidavit. That's the only place that it actually said wherever located. I thought that was in the warrant itself, but you say it's not. It's not, Your Honor. The actual warrant references the Eastern District of Virginia on the cover page. It makes reference to two attachments. One attachment does describe what is meant by an activating computer. Again, it does not contain wherever located language. Our argument is that the activating computer definition is limited by what was on the face of the warrant, an activating computer within the Eastern District of Virginia, because that's what the warrant expressly authorized. Then it also specifies the information in attachment B, I believe, the information that was being searched for, that was returned from the computers. We did make that argument that this was simply a search that was performed outside the scope of the warrant. I don't think that was directly addressed by the court in Horton and Krogan, but I don't want to be misleading because I believe the court did address it as part of the good faith analysis. I think that if you actually look at the warrant itself, and again, not the affidavit that was submitted in connection with the application, although the application did also say that it was seeking authorization for a warrant to search property within the Eastern District of Virginia as well. On your second issue, I didn't see a response in the reply brief. I may have missed it to the government's point that the defendant's admission that he was regal beagle really eliminates the materiality argument on the motion to compel. I don't think I did address that, Your Honor. What I would say in response to that is that that is definitely inculpatory evidence that weighs against us in this case. I don't think it completely eliminates the materiality question, though, because again, materiality, first of all, evidence can be either inculpatory or exculpatory to be material, and the district court recognized that. If the computer software code had been turned over to Mr. Gene and his experts had been able to analyze it and they found some problem, some bug in it that could have resulted in some problem with his computer or disabling of a firewall was something that was mentioned by the experts during the testimony. If they could have actually found something like that, then that would have been exculpatory. I think, again, it still would have been material because it still would have been something that could have given rise to an argument that there's reasonable doubt that everything on the computer was his or that somebody didn't come on and do that. Again, I would just say that that is evidence that weighs against us, but I don't think it's determinative as far as the admission that he was that user. I would also point out that regarding that issue, the district court, while recognizing that evidence can be both exculpatory or inculpatory and still be material, really based its decision on the fact that there appeared to be very little chance of actually finding exculpatory evidence. I think that goes toward your question, Judge Loken, as well, that he admitted that this was him. It's not very likely that they're going to find anything necessarily that's going to give rise to any real argument. The possibility was there, but the judge kind of said there's too little of a chance, so it's not material. The motion to compel isn't to bolster the suppression issue. It's for defending against the charge. You have to find something that would overpower, so to speak, his admission. Well, Your Honor, I would also point out on the other side of the argument that if the software had been turned over, it had been analyzed, and Mr. Gene's experts had found no significant errors in the code, that still would be material because it would have foreclosed that avenue of defense. It would have let him know that that's not an avenue to go down. I need to focus on something else. I don't mean for you to dwell on it. Sure. Because your response makes sense, and thank you. Sure. Ultimately, regarding that, Mr. Gene has to recognize that the standard of review in this case is a difficult one to meet because it does require that he shows prejudice to his substantial rights. I would just point out in this case that because we never got that code, it was never turned over, if there had been some error in it, something exculpatory, we've never had the chance to find it. In essence, we're unable to prove that it would have been exculpatory because we don't know because we never got it, and I would just suggest that shouldn't be held against Mr. Gene. Again, if it had been turned over and nothing had been found wrong with it, that still would have been material. It still would have helped Mr. Gene in his defense. I would still his substantial rights were prejudiced. Going back just briefly to that first issue of good faith, I would just point out that while Leon is clear that deference is owed to a magistrate's determination as to the existence of probable cause, it doesn't suggest that the same deference should be paid to a magistrate's determination that she had jurisdiction to authorize a worldwide search of thousands of unknown computers, which is what essentially happened in this case. Law enforcement shouldn't be allowed to plead good faith when a magistrate so clearly exceeds her authority and the NIT warrant was deficient enough. Based on that, the law enforcement should have had enough reason to know that this magistrate did not have the authority to do this, just based on the fact that similar applications had been denied in the past and based on the fact that the Department of Justice was actively lobbying to get the rule changed so that these kind of things would be allowed. I would just suggest that somebody who was experienced in law enforcement as the officer that applied for this warrant should have known that this magistrate judge didn't have the authority. Again, regarding the goal of the exclusionary rule, obviously it's deterring law enforcement from committing constitutional violations. I think that while there was an error by the magistrate here, I think that there still is deterrent effect that can be had from this because it prevents law enforcement from seeking warrants from magistrates that don't have jurisdiction to issue them. So I do think that is an important consideration. Unless there are any other questions from the court, I will conclude that part of my argument and save the rest of my time for rebuttal. Thank you. May it please the court, once again, I'm Dennis Dean. I represent the United States government in this case versus Anthony Jean. I've been record counsel since its inception. So the appellant filed their brief and then between the time that they filed their brief and I filed my reply brief, this court decided the Horton-Croggan decision, which by and large resolved the first issue. Warrant was required. Warrant was void ab initio, meaning a warrantless search had actually occurred, but the Leon Goodfaith exception to the exclusionary rule did Horton-Croggan. It cited Jean on multiple occasions. I thought the Jean decision was very detailed from the district court judge into why he held what he did on each of the points. So the only possible remaining issue on that first point of the appellant is that the warrant on its face only stated Eastern District of Virginia. I do concede that that's what it says. But as Judge Benton pointed out, the affidavit did contain this wherever located language. And the neat thing about this case is that it's being litigated all across the country. I think in every single circuit they have at least one of these playpen type cases. So we've seen that courts in these cases have kind of come together recently and said if the execution of the warrant onto the computer is amounted to a constitutional violation and if the judge did not have authority, Leon Goodfaith applies. That's been held here in the Eighth Circuit. It's been held on the Fourth Circuit, the First Circuit, and I believe the Tenth Circuit right now. And the appellant really proposes no new case law why Leon should not apply and basically kind of hints that this court just got it wrong in Horton-Croggan and that case is currently, I believe, on the Supreme Court's docket. Jean's argument fails because law enforcement's mistake in obtaining this warrant was not the result of deliberate misconduct by the FBI as this court held as the standard in Horton. This is shown by the attesting agent's inclusion of the term wherever located. The warrant itself is titled computers that access a certain website. When you bring in the fact that a website's involved, common sense would tell you that there might be somebody outside of the district that could be involved in this. And more importantly, the affidavit goes into great detail about how the TOR browser works and the fact that it masks the user's identity. The whole point is anonymity and we have no idea who we're dealing with when we're looking at somebody who's using TOR. So I think that any judge, any magistrate could tell that the computers very possibly would be located outside the Eastern District of Virginia in this case. And the only tie to the Eastern District of Virginia was the server at that point was there. As Mr. Holt pointed out. It's also true from a good faith standpoint that until you resolve the issue of whether the search occurs at the computer versus after the user has responded to the Eastern District of Virginia, the location is uncertain or unresolved. Absolutely. And that goes into my next point. It talks about this deterrence effect and you suppress if there's a deterrence effect. Well, the rule's been fixed now. And so because of changing technology and the fact that we don't know who we're dealing with, just as you said, Judge Loken, the rule's been fixed now to where a magistrate can absolutely issue this warrant. Again, keeping up with technology. So I do think the first issue here is a non-issue. Good faith applies and the evidence is saved from suppression. So the crux of the argument is did the court abuse its discretion by partially denying Gene's motion to compel? I don't believe it did. The timeline is that Gene filed a motion to compel the government to turn over source code information for the exploit, among other discovery requests. The court held an evidentiary hearing, taking evidence from experts on both sides. The court then held an in-camera review of the government's reasons for citing law enforcement privilege, including the review of a confidential and classified affidavit that was provided by the government to the district judge. Subsequent to that, the court issues a 17-page detailed opinion that holds that the government must turn over the unique identifier code, which the government had agreed to do in the hearing. The request for the source code version of the NIT instructions was moot. That sounds very complicated and it sort of is, but basically the appellant thought that what the FBI did was even more complicated than they said it was. Once testimony came out, the judge decided everything had been provided that needed to be regarding that issue and it was moot. And then finally, the issue here, the request for the source code for the exploit was immaterial and covered by privilege. So what is an exploit? The exploit is the software that the FBI used to bypass the anonymity contained in TOR's safeguards. So it's how they figured out who these people were that was accessing the site. It's a law enforcement tool. That's all it is. Obviously, I have no authority to discuss the contents of the memo that the judge viewed in camera. I can obviously make that available to the court if you all request. Similarly, I can't discuss the redacted portion of the order in this public setting but can make that available for the court as well. But the judge's order clearly states that public interest is well served by keeping this exploit code secret, by not revealing this tool. The court also stated that the concerns are grave enough that a protective order would not suffice. Now, Gene, in arguing for materiality, says that the exploit could have caused issues for his computer and that's why he needs to examine it. But there's never been any evidence in this case or any nationwide that I'm aware of where the exploit did not operate correctly and exactly as it was intended. Basically, the defense is on a phishing expedition, which the court recognized after hearing testimony. Well, their expert did say there was a vanishing small possibility. Vanishingly small possibility, absolutely, Your Honor. So, yes. You're exaggerating that vanishingly small amount. Very low. And after hearing the testimony, the court described there being any issues with the exploit as a virtually impossible hypothetical situation. So I think the court saw that testimony and that scenario for what it was. I mean, long and short of it is, Gene wants to say that all these things could have happened on his computer. And as we say down in Arkansas, that dog don't hunt. It just wasn't present. There wasn't any evidence in it. The defense's motion is very thin on case law regarding this issue. The view case, if the material was disclosed, is there a reasonable probability of acquittal? And they talk about how exculpatory evidence and inculpatory evidence could be just as material. Well, the source code is neither. It's a tool. I believe Special Agent Alfin described it as the lock pick to get in the door of a house. It's not what you found in the house. It's how they got in. It's something that the FBI uses. The inculpatory evidence linking Gene to the playpen side and everything that he viewed and everything he did was, of course, all turned over in this case. Like I said, these cases have nationwide appeal and no decisions, to my knowledge, have been reached on this issue that I'm aware of. I just checked with Washington, D.C. last week, and I think that there was a consolidated oral argument in the Seventh Circuit on several playpen cases, and one of them had a source code discovery issue in it. So it might have been argued in the Seventh Circuit, but no decisions have been reached. The only other issue mentioned in the appellant's brief was the disclosure of the server component, and there was an issue that the judge thought that that was waived and it wasn't. So the court in a separate order about a month after its initial order denied the request for the server component. That was basically all the data the FBI received from the playpen website is applied to the user Regal Beagle or the actual server itself that was used to collect the data, and the court held that Gene failed to show materiality in that. And as Judge Loken pointed out, basically Anthony Gene wanted to say, well, you might have gotten the wrong guy or this might not have worked, but what we did was we sent something out saying who is Regal Beagle, we got some information back, and then we went and knocked on the door of the guy that the information said was Regal Beagle after conducting some additional investigations, and we asked the court. And then the government's witness also said that we took a snapshot of the defendant's computer before we sent this tool to it, and it came out with a stream of information. We then used the tool, we then sent something to the computer after that tool had been deployed, and the exact same stream of information came out. So it was basically we didn't alter anything, and that data stream showed that. Again, some of the stuff is a little high-minded and technical for me, but that's the way it was explained in court. So that's why the judge regarding the server component found that that was immaterial. And if you all don't have any more questions, that concludes my argument. Thank you. Your Honors, I'd like to briefly address the issue of law enforcement privileges brought up by Mr. Dean. Obviously, there's not a lot of actual argument I can make about it because I don't know what was presented to the court as far as that classified memo. But what I would just point out is that this exploit was something that was sent out to every single one of these computers that was involved, that had a search performed on it, the FBI sent this exploit to. I think there was some testimony from Mr. Dean's expert that people do monitor, you know, they do monitor these kind of websites. They monitor traffic going in and out. It was possible that something like that could have been gotten, you could have been intercepted in some way. The FBI treated this exploit as something that they sent out to that would have been subject to a protective order. And the district court, I think, kind of intimated that there was a possibility that that expert could then go create his own exploit based on the knowledge that he gained from that. And I just didn't feel that in light of the way the FBI treated the exploit by sending it out all over the place, I don't think it was subject to court supervision in looking at it to see if there's anything that could have helped or hurt Mr. Dean in that. So that was all I'd have to say about that. If there are any other questions, I'll gladly answer those. But otherwise, I'll conclude. Thank you, Your Honor. Interesting case. It's been well-briefed and argued. It has a lot of company. We'll take it under advisement and we'll see where all the courts go with it, including ourselves.